Good afternoon. Now we have one case to hear this afternoon, Metcalf v. Merrill Lynch et al. Counsel, you ready? Proceed. Good afternoon, Your Honors. Max Kennerly from Beasley Firm here for the appellants. You're reserving time for rebuttal? Yes, Your Honor. We'd like to reserve five minutes. All right. That's a lot. Before you begin, Counsel, you've appealed as to Bellmore. You want to pursue your claims as to him. But you move for summary judgment in your favor, in his favor, and against yourself. And you've appealed from that order and you haven't argued it. You're not arguing that you're serious about looking for a reversal as to Bellmore? Not as to the limits of that order. If I could, Your Honor, in about two minutes I can explain why that order looks that way. All right. When you get to it. You know, the plaintiffs raised in our arguments three main arguments. One is that we didn't meet the same cause of action test for res judicata. The second is that the nature of an interpleader precludes the use of res judicata. And the third is that Merrill Lynch acquiesced to the claim splitting in this case. And I think the most obvious question that I'd assume Your Honors would have for me is why are there two lawsuits? The reason why relates to how Merrill Lynch dealt with the plaintiffs. This is not your typical interpleader in which there's a garden variety dispute over the claims in some sort of fund and the stakeholder comes in and says, I don't want to deal with it anymore. The plaintiffs were specifically told by Merrill Lynch to put their funds where their funds ended up. Merrill Lynch then for several months represented to them their funds were intact and separate and frozen, which is why the plaintiffs proceeded first with an equitable interpleader in New Mexico. It was only when Merrill Lynch responded and said, your funds are not intact. Your funds are not separate. In fact, only half of the funds remain and they're commingled with other investors. That was the response to the New Mexico case. That's when plaintiffs realized this is not your typical let's get our funds out of the bank. This is something much more severe. Half of our funds are missing. Half of our funds will never be recovered. We don't even know what the source was. So why didn't you amend? Because of jurisdiction. This is where we get to Belmore. We had to bring the claims to Pennsylvania because by that point, Merrill Lynch, which was involved in this case through its Pennsylvania offices. When your friend across the aisle says you should have brought them to New Jersey, your damages claims. I don't understand. Trojan brought theirs in New Jersey. Yes, Trojan. In New Mexico, excuse me. Yes, Your Honor. Trojan didn't have the same interaction with Mr. Lawrence Belmore. And that's where we reached the Belmore issue. Belmore had specifically represented a number of facts about this fund that it was inside Merrill Lynch, that Merrill Lynch was monitoring it. So we realized only upon Merrill Lynch's answer in New Mexico that we would need to bring suit against Merrill Lynch. Merrill Lynch had fired Lawrence Belmore by that point. So we realized we had to bring a case against Merrill Lynch, which could be brought anywhere in the country, and a separate case against Belmore in case Merrill Lynch took the position, which they eventually did, that Belmore was acting outside the scope of his authority, that they were not vicariously responsible for his actions, and so on and so forth. Okay, so why didn't you dismiss New Mexico? Why did we dismiss it? Why didn't you? Because at that point, we tried to initially. We moved to dismiss without prejudice. Merrill Lynch objected to it. And you withdrew. Well, we withdrew the motion to dismiss. At that point. We don't have to do what they say. I understand, Your Honor. We run into this jurisdictional problem both ways. Well, we probably should get to the residue caution issue and acquiescence issue, because you've reserved five minutes in your time. Yes. I wouldn't leave away. Thank you, Your Honor. Well, this is all wrapped together. So at this point, we have a New Mexico just interpleader, and we have. . . Why didn't you bring all the claims that could be brought in one location? Isn't that what res judicata is totally about, that you risk having res judicata applied if you split your claims? Well, that's the three-part response, which is the first is not necessarily with an interpleader. The purpose of an interpleader is to have a limited litigation over just what's going on. But does that matter? What case says that interpleaders are different and res judicata applies differently? The Hovitz case from Third Circuit, which is briefly referenced. . . What about some New Mexico case? How about that? A New Mexico case on interpleader? A New Mexico case. . . This case requires the application of New Mexico law, does it not? We are reviewing the preclusive effect of state court judgment, and we look at the law of the state which renders that judgment. So you're telling us what Third Circuit said, and one of the problems I have with this case is that the parties, neither the parties nor the district court, cited much more than federal agency law or federal law, and precious little New Mexican law. We have three responses on that. The first is that the parties, and I don't want to speak for my opponent, but the parties seem to agree the res judicata elements are the same under the federal standard and the New Mexico standard. Let's say that's so. Why don't we get to acquiescence for a moment here? So we are stuck as plaintiffs. For fear of losing. . . What's the case you said, Hovitz? Hovitz. Hovitz. Is this cited in your brief? It's cited in the defendant's brief, which talks a little bit about the interaction of interpleader and res judicata. Hovitz, though, does not support defendant's arguments. Hovitz says you can find compulsory joinder where the stakeholder is totally blameless, and the panel is very clear of a stakeholder can use compulsory joinder for a preclusive effect if the stakeholder is completely blameless, and the Third Circuit even draws examples where they would not be blameless, including the mismanagement of funds. But this is where the claim splitting occurs. We have a stakeholder claim in New Mexico that we can't move to Pennsylvania because those are New Mexico residents there who don't have a close relationship to Pennsylvania, and we have a Pennsylvania defendant we have to target. So we filed the two cases separately. As of August 2009, there's two claims in Pennsylvania and there's an interpleader in New Mexico. Now, in theory, Merrill Lynch could have objected to either. It could have told the federal court in Pennsylvania, this is Liz Pendens, this is somewhere else, you need to stay, it shouldn't be involved here. It could have told the court in New Mexico, you need to enter a declaratory judgment, you need to decide these issues. Merrill Lynch did neither. It went two years with this separate litigation with everyone. Isn't the mention of race judicata by Merrill Lynch in New Mexico sufficient? What Merrill Lynch raised was prior to the filing of the Pennsylvania case, there is one line where they object to potential form shopping. That's it. Once the Pennsylvania case is filed, Merrill Lynch never objects to that. In fact, Merrill Lynch repeatedly seeks rulings from the Pennsylvania federal court on the merits. The case was actively litigated on transfer motions, on discovery disputes, on any number of things for 15 months, and then it was transferred from eastern Pennsylvania to middle Pennsylvania in January of 2011, and then it was dismissed in July of 2011 after further proceedings. As I read the record here, the only mentions of not being happy with the Pennsylvania action were before it was filed and then after it had been dismissed. When Merrill Lynch filed a motion to dismiss in October of 2009, it moved on the merits. It didn't mention any foreign defense. It did. And just under New Mexican law, and you gave it to the judge. This is one of the few. We have a few cases in New Mexico. You know the case I'm talking about. Under concerned residents of Santa Fe North, what is required to show what you're about to tell us, I think, is acquiescence. I think our view is New Mexico also applies the restatement of judgments 26, or applies effectively the same, which is the obligation. New Mexico, I think, may even be a little stronger in the Third Circuit. The party opposing claim splitting must object at the soonest practicable time. Okay. So what about the motion to dismiss filed by your opponents in Pennsylvania where it specifically talks on page 3 of the fact that there is another action taken and it is that the plaintiffs are disingenuously asserting Merrill Lynch has improperly retained control, belied by the position taken in the New Mexico action. I mean, it's an early possible moment. They're saying this is ridiculous in essence. Well, I read that as an objection to claim splitting, and the fact that they're moving on the merits indicates they want the Pennsylvania court to decide the merits of the action. What Merrill Lynch was contending there, when we filed the interpleader, we for the equity that we're to pledge under New Mexico law, we repeated what Merrill Lynch had told us. Your funds are separate. They are intact. You can go get them. But it's not like you should have been unaware that they were going to contend that everything should have been happening in New Mexico when they say it's disingenuous to be filing something in Pennsylvania. Isn't that the whole purpose of the acquiescence is that you just don't rest on your laurels, basically, and then surprise res judicata? I mean, you had to know at that point, did you not? That's the point, Your Honor. They never raised that. They never told this court. They never told the Eastern District or the Middle District, stop. But it's more than that under New Mexican law. As I read the Santa Fe North case, and I'll quote this one sentence, if a defendant sees two actions as detrimental to the defendant's interests, it should be incumbent on the defendant to specifically attack the claim splitting by obtaining court relief at the earliest feasible point, not just putting an objection in a set of papers, but looking for court relief as to it. And that's the argument we present. Now, do you believe that they would have been entitled? I mean, if you bring an action in a federal court in Pennsylvania saying there is a pending state court action, please either stay this case or dismiss this case, under law, under federal law, we don't do that. We don't throw people out of federal court. That's a principle of jurisprudence. Why should we make the defendants do what's essentially a useless act? It's their burden as proponents of res judicata to establish these elements, and it's their burden under acquiescence to ask the court for that. What Your Honor has asked me is a question that would be great to present to either of these courts when they were litigating the dual cases, either New Mexico or Pennsylvania. Couldn't they have moved to transfer the damages claims into New Mexico and consolidate it with the New Mexican actions? Couldn't they have done that? Absolutely, Your Honor. They didn't have to move to dismiss. What's the earliest feasible moment from your perspective that they could have raised this or should have raised it? When the complaint is filed, they should not have moved to dismiss on the merits. That was acquiescence. In the Eastern District of Pennsylvania? In the Eastern District of Pennsylvania. They should have objected to Liz Pendens. They should have moved for a stay. Anything. So in the answer that they filed, as I understand it, the complaint was filed, an answer was filed, then it was litigated, and then whatever, 15 months later, 18 months later, the motion was filed. So right there in the answer, that's the earliest feasible moment? I would say the motion to dismiss. The answer doesn't come until well later once the motion to dismiss is decided. I think the motion to dismiss, what's incumbent upon them, as soon as they've got this separate complaint in Pennsylvania, is to say something to either court, move for some relief, stay, consolidation, Liz Pendens, anything. And what they did here was literally nothing. There was no filing in either court that rests any sort of belief precluding this. I believe I've reserved the rest of my time.  Thank you. Thank you, Your Honor. Good afternoon. I'm William Mahoney with the Stradley Firm on behalf of Merrill Lynch. Bring the microphone down. Thank you. Merrill Lynch defendants. And if I may, I would be more than happy to address the issue where we just left off with Mr. Kennerly. I believe the Santa Fe Estates case says exactly what Judge Greenway suggested, the earliest feasible opportunity. And one of the things that's important to remember in this case is that there is a world of difference between the chronological time for when the plaintiffs filed their action here in the Eastern District and when we first filed our motion to dismiss or raise judicata grounds. You're not suggesting that the earliest possible moment is after a final judgment? Oh, not at all. Okay. That's really, how else did you mention it then? Well, we mentioned it in our earlier pleading. I mean, I think one of the things here is... What earlier pleading? When the plaintiffs in New Mexico filed a motion to dismiss the claim that they started in New Mexico. This is before the Pennsylvania action. Correct. But in that motion, they indicated that they wanted to withdraw so they could come up here and file in Pennsylvania. So you're conceding you've never mentioned it in the Pennsylvania action even though it was actively litigated for 18 months. Well, in fairness, we did not mention it until it was ripe. Which is after it was dismissed. After New Mexico was final. Fair enough. But quite honestly, I'm not sure that we would have been able to raise it in any procedural manner consistent with Rule 11. You never tried. You never tried. And New Mexican law says at the earliest feasible moment, and the Santa Fe case makes it very clear, that first of all, you have to show that the two cases are working to your detriment. You litigated this case for 18 months. Where is the detriment to you? Your Honor, the case never in Pennsylvania, either in the Eastern District or after having fought it for months, plaintiffs then consenting to the Middle District, never left the pleading stage. Ever. Well, I know that, but I don't see any objection to the two parallel actions proceeding for 18 months. I grant that when it was transferred to Middle District, most of those motions had been undecided. Correct. But there were plenty of motions. There was plenty of work being done. The question is what's the impediment during this 18-month period? The impediment is that there was no relief we could have requested that reasonably could have been granted. What about transferring the claims to New Mexico? I don't know how you could transfer claims from a federal court to a state court, Your Honor. I'm just not aware of any procedural mechanism that would allow that. And what if you moved to dismiss it? To dismiss which one? The Pennsylvania action based upon the prior filed action. Again, we would have no legal theory because that action had not come to any final resolution, so we couldn't raise a raised-judicata argument there. You could say there's a prior pending action. You're saying there's an action that everything that's here is encompassed in the action in New Mexico. Please dismiss it. And then it's part of the Trojan case. I mean, you've got Trojan there complaining of a lot of the same stuff of you as plaintiffs here and consolidate those two cases. Look, effectively, the New Mexico case wasn't formally dismissed until June of 2011, but as between you and plaintiffs, it really was completed November of 2009 when the interpleader was granted and the funds deposited in court. We were not dismissed from that action, Your Honor. Not until formally dismissed until 2011. Well, why didn't you try to get in there? I'm missing your point, forgive me. You never tried to get to New Mexico. You never took, well, you never... Your Honor, they're not our claims. With all due respect, they are not our claims. But you have not... As I thought you already mentioned... You have not explained of the parallel litigation, the claim splitting. At no point during the pendency of the Pennsylvania action for 18 months do I see you seeking court relief because of plaintiff's claim splitting between New Mexico and Pennsylvania. Your Honor, that's exactly, in my view, the point. There was no viable mechanism by which we could have done that. So you wait until the New Mexican case has been, New Mexico case, has been dismissed. But isn't that, isn't that the antithesis of what res judicata should be about? Res judicata is for the purposes of streamlining litigation, easing burdens on the parties, easing burdens on the courts, ending things more quickly, not having inconsistent judgments. By waiting two years, almost, to come in and say, this was wrong, res judicata applies, we got you. Is that consistent with what underlies the whole principle of claim preclusion? I believe it is when you have no viable mechanisms by which to raise litigation. Explain that, explain that. Could you not have filed a motion to dismiss? Could you not have filed a motion to stay? Could you not have filed a motion to consolidate? Why could you not have done that? Could you not have, you know, motion to dismiss, not on the merits, but say, there's an action in New Mexico. Throw this out. Your Honor, perhaps I could have. I'm not sure that would have been comporting with my ethical duties. Because under Colorado River? Exactly, Your Honor. And if I may, and you read my mind, I don't think it's too hard to do, but you did nonetheless. The Spring City case, I think, is very much instructive here. The only mechanism by which I believe Merrill Lynch could have raised an issue before a court in Pennsylvania would be by a motion to stay. The case law is quite clear, both Third Circuit and in the district courts in this circuit, following Third Circuit law, that a motion to dismiss under these circumstances must be analyzed under the Colorado River abstention doctrine. In connection with that matter, we would have to have shown both that, among other things, there were substantially identical claims. And remember, identical claims here means the actual claims asserted different from the standard of res judicata, which looks at the underlying facts, not the legal theories asserted. So when you look at what they alleged in New Mexico, they just said we were a nominal party. I don't even think there was an actual legal claim asserted. Certainly, we could not meet that burden. Even if we had, Your Honor. Well, they were certainly complaining about you in New Mexico, although they didn't file any affirmative claim as to you there. But the paper certainly complained about the actions of the Merrill Lynch defendants. Indeed, which, one, makes the question why they simply didn't bring those claims in New Mexico. And two, under Colorado River. That question occurred to me, too. Under Colorado River, I don't think. Would you have opposed it? You say now that's where they should have been. No, they should have done it. They should have brought them in New Mexico. That's where they could and should have been brought. Would you have opposed them bringing them at the time, do you think? I don't think I would have had a basis to. There's no way they could have really. I don't think I would have had a basis to oppose it, Your Honor. Merrill Lynch, certainly there's jurisdiction over Merrill there. Well, you didn't want them to dismiss it, so you wanted it to stay there. You didn't want to dismiss it so they could go to Pennsylvania. And in fairness, we made that quite clear and pointed out the dangers of peaceful litigation. But back to the point on the claims. I don't believe Colorado River, Your Honor, is flexible enough to say, quite frankly, just because someone may gripe about your conduct but they don't bring any claims, I don't think you meet the first test. How about motion to stay? You said that's the only viable thing you could have done. I believe that's correct, Your Honor. And, again, that would have to be analyzed under the Colorado River action. And if I may, which I think that this is a— And why couldn't you have brought it? Is that what you're about to respond to now? I'm sorry, what? Why couldn't I have brought what, Your Honor? You couldn't have filed your motion to stay because it wasn't viable. No, it certainly was not viable. In fact, quite frankly, I think it would have violated Rule 11. I don't think there was any basis whatsoever, either under the claims test or even once you get past that, under Colorado River. Certainly as this circuit has interpreted it, you need to show something very compelling beyond that. There has to be very unusual, exceptional circumstances is the second part of the test. And, again, this is— So the Fed-State relationship really matters here. It certainly does, Your Honor. And if I may, the quote from the Spring City case is that this court noted, the general rule regarding simultaneous litigation of similar issues in both state and federal courts is that both actions may proceed. They may proceed until one has come to judgment, at which point that judgment may create a res judicata or collateral estoppel effect on the other action. So, in this case, the plaintiffs ran that risk. And it wasn't like we didn't put them on notice that we objected, because we did in the New Mexico matter. And, again, I appreciate it does seem, when you look at this, certainly at first glance, the better part of two years? It seems like somebody could have done something in that meantime, right? A lot of that two years, and I'm sure that you've gone through the record, was delay that had absolutely nothing to do with Merrill Lynch or, quite frankly, any party. The unfortunate passing of Judge Golden, the case being reassigned. No, my only point on that was that there were continual motions being filed. The parties were filing stuff left and right. I'm not sure that I would concede left and right, but there were motions filed. No question. But, again, absent another feasible option, procedural option available to us, we filed the res judicata motion less than six weeks after it became ripe. It was not ripe until that point. If that is the test, if that is the only thing I would agree with you, I still think that it's more complicated than that. But let me ask, one of the reasons that this is complicated is because the district court gave it so little attention. The waiver or acquiescence issue, however you characterize it, was dealt with in two paragraphs of the district court's opinion. One paragraph set forth plaintiff's argument, and the second paragraph dismissed it summarily, virtually summarily, with no discussion and no citation of any law. So we really don't know. There's no reasoning here. And the stakes are pretty high for the plaintiffs. Agreed. All the more reason that the plaintiffs especially haven't been put on notice before they took the action. Not that we were terribly altruistic about it, but as a practical matter. No, but I would have expected, for example, that the district court would have gone into some of the things that we've discussed today and considered some of the issues that have been raised. Perhaps, Your Honor, but in fairness to Judge Jones, and he's not authorized me to represent him in this proceeding, but I will throw this out there, Judge Jones had a pretty good handle on the procedure in the case. Judge Jones, at least for a portion of time, lived with the case, and I believe Judge Jones understood that we did raise this issue at the earliest feasible moment. No, no, I'm not talking about that. But the acquiescence piece. The acquiescence piece. And the characterization. The acquiescence piece was dealt with in actually one paragraph. Yeah, you're right. I think Judge Jones simply said we filed it in a timely manner after it became light. Yeah. What was the focus before him? Was it the nature of the interpleader in the Hovis case? Or was it a lot having to do with the restatement and the acquiescence? Again, with all apologies to Mr. Kennelly here, I don't exactly recall his briefing, but I don't recall it being very dissimilar from the briefing we filed before this Court. Okay. Does Hovis help you or hurt you in terms of res judicata? I have to say I totally forget the Hovis case, but I will put this out there. I'm sure it helps me. I think I really do not remember the case. That's my apologies. Okay. If I may, I see I have a minute 50 left because, Judge Barron, you, I think rightly so, were very keen on the Santa Fe Estates case, which is one that I do remember. Okay. And I think we both agreed that New Mexico law should be applied here. The Santa Fe case is one on the face of it that would appear to hurt us. However, in that case, a couple things there. Number one, the defendant in that case, apart from in answering the complaint, raising a generic res judicata affirmative defense, never said boo about it afterward. The case proceeded and went all the way to the point of summary judgment in that matter. Another point that is worth mentioning there that the Court stressed in the Santa Fe case. So there's no mention at all of other proceedings? I'm sorry. No mention at all. No, in the Santa Fe case, there were actually two other proceedings, and that was part of the Court's reasoning, which was. But, I mean, no objection. That's correct. In fact, and here's another point that, Judge Barron, I would hope you would focus on. The Court in Santa Fe also said that the defendant, in an earlier argument, because they were opposing interveners who wanted to come in and join, they said there's no need for the interveners to come in because these plaintiffs will adequately represent all of their interests. And the Court took the counsel to task in the summary judgment motion, and there's a colloquy actually in the decision, you may recall, where the Court said, look, you basically accepted the claim splitting here by virtue, if not through other conduct, by virtue of saying, you know, taking a position that they don't need to be here because these folks who are here will represent all interests. Well, and you accepted the claim splitting by litigating this case without complaint for 18 months. I don't agree with that, Your Honor, with all due respect. We complained in New Mexico less than a month before they filed this. Before you filed it. Now, question. Yes. If this dual, parallel litigation was, under Santa Fe, has to be detrimental to you, why did you not complain? Your Honor, and forgive me because I'm sure I'm being very inarticulate, there was no mechanism by which we could have done it. We've already put the plaintiffs on notice that we disagree. That's your opinion. It certainly is. I mean, look, if this panel was to find that, yes, there was another mechanism that Merrill Lynch should have pursued, well, then I guess I'm hard-pressed to say that we raised it at the earliest feasible time. I will also say this, though. Given that we were still in the pleading stage, even if we never raised it, I still think, quite frankly, in a life-cycle litigation as opposed to chronological time, okay, which are two very different things, I would submit. We raised this issue in a timely fashion. We raised the issue having given them notice before they did anything so that they could not pursue what I believe, at least, was an ill-advised strategy, and they did it anyway. And now they want the court to offload all responsibility and risk for their tactical decisions, and I don't believe rejudicata or acquiescence allows for that. What do you think Santa Fe States requires you to do? I think Santa Fe, and again, one of the difficulties here, right, there's no bright-line test, and if I mail faster because my time is up. But I think Santa Fe, quite frankly, similar to R&J Holdings here in the Third Circuit, I think what they say is when you learn about this and you have the opportunity. Remember, in Santa Fe, another point they raised was that the court waited five-plus months before even raising the issue, five months. And I think when you look at those cases, the court is saying, look, there's no bright-line test, nor should there be, because it's a facts and circumstances situation. I think that's a fair reading of it. But when you continue beyond pleadings into litigation, basically letting everyone, including the court, think that, yeah, we're going full bore on this. I mean, R&J, they actually went up to the Pennsylvania Supreme Court before they said boo about claim splitting. I think both those courts would say, I don't know if they would agree on timing or a particular bright-line, but I do think courts say you need to go, certainly beyond pleadings, you need to go some ways down the road and commit yourself to litigating that matter. And I would submit that if you simply say, well, either you file a motion to dismiss, which you have to do, or answer, or otherwise run the risk of default, or file a motion that, again, in my view, would very seriously run afoul of my Rule 11 obligations, I don't think Santa Fe or the R&J Reynolds Court, pardon me, would find that we acquiesced under these circumstances. I simply do not. I have one final question, not on that. Now that we've resolved that issue, I'm sure, between us. Question. At page two of your brief, you say a question may still exist as to our jurisdiction because of Belmore's cross-claim, you say, has not been dismissed. But you don't argue it in your brief, and you ask us to affirm. So I assume you are conceding we have jurisdiction? I would say two things. Number one, yes with a caveat. That's the first thing. I don't want a caveat. I understand. The second point is this. Quite frankly, and I think it goes to the question that you may have asked Mr. Kennerly right out of the gate. Yes, it does. If Mr. Kennerly's position is that Mr. Belmore, by virtue of the motion for summary judgment that they filed against themselves in favor of Mr. Belmore, as convoluted as that is, if they accept what the judge wrote, which was, I'm going to grant summary judgment, but the price you pay is you forever waive any claim against Belmore going forward. Then I agree, yes, there is jurisdiction. If they're going to take the position, however. Their position has nothing to do with jurisdiction. The district court dismissed with prejudice as to Belmore and dismissed the cross-claim against Brubaker. So there are no more parties to the cross-claim. Both parties to the cross-claim are out, are gone. So we would have jurisdiction. Would we not? You would, unless somebody. I'd like to be queen of England. My father's not king. I don't care what he'd like to do. I think we have to deal with whether we have jurisdiction. I'm perfectly happy with this court's jurisdiction. My concern is that it's the same concern the court raised, is that there's an issue of manufactured jurisdiction, and that's why the court said the way we avoid that issue is I'm basically going to treat your motion as a motion to dismiss all claims of prejudice. With that understanding, Your Honor, I have no qualms with the jurisdiction of this court. That was a little bit of a caveat, too, right? I'm sorry. I have no qualms with the jurisdiction of this court. Good lawyers use caveats. We'll just see if you get away with it. Any further questions? Thank you. Thank you. I realized I never answered Your Honor's question directly about Belmore. Belmore was a strange situation. Joe spent a lot of time in Belmore. But it's important. The district court, when it entered summary judgment on res judicata, dismissed Robin Brubaker, an employee of Merrill Lynch, but did not dismiss Belmore, which frankly baffled us as plaintiffs. We alleged both of them everything they did was within the scope of their duties. The motion for summary judgment against ourselves was that Judge Jones had interpreted us as having some degree of claim for actions outside of Belmore's vicarious liability. We moved for summary judgment on those saying we were racist. He was dismissed with prejudice in July of 2013. Yes, Your Honor. And what he's dismissed on is the same basis as Brubaker's dismissed. So we have no claims outside of his vicarious liability, what he did in the scope. You might want to focus on the point that your adversary made with regard to how his hands were essentially procedurally tied and that he acted at the earliest feasible opportunity. The New Mexico standard, which Judge Barry had better than I did, is not a matter of when do you put plaintiff on notice. That's not part of either the Third Circuit or the New Mexico standard. He also raised when could we first assert res judicata. That's not part of the Third Circuit standard or the New Mexico standard. The New Mexico standard is a burden to expeditiously seek relief of any sort. It doesn't say when can you first have a completed res judicata. You must seek relief. It's fine for a state court to say that, but when a lawyer has an ethical obligation and when the case law is clear that federal courts do not, under Colorado River, decline to exercise their jurisdiction and there's no relief that you ethically can seek, your hands are basically tied. And yet in the Santa Fe Estates, they asserted res judicata in the answer and nobody had any idea what was going on here until they filed a summary judgment action in however many months, in 05, in April 05. Here it's much different. You were put on notice that there were other actions and they weren't happy about it and the claims were being split and they were objecting to it. What else should they be doing? Well, it's two parts. One, their notice is prior to any sort of claim splitting. Well, I'm talking even in the motion to dismiss. It's clear what's going on, whereas in Santa Fe Estates, blanket, res judicata. Well, everybody throws the kitchen sink in. We have no idea that somebody's not happy about it. Well, I disagree that it would be a Rule 11 violation to ever mention to the federal court, by the way, we think that there's an issue and it should be done in New Mexico. Well, but you're not saying that. You say they wanted to file a motion to dismiss. Is somebody going to spend $6,000 working up a motion on something that's futile? Well, not necessarily futile. It was never presented to the court. We don't know if they would do it. But I look at New Mexico. They did nothing in New Mexico either. If they wrote a letter to the federal court while it was still in the Eastern District saying, we're extremely concerned about res judicata, we want to bring it to your attention, Your Honor, would that satisfy either New Mexico law or federal law or both? The answer I'd have to give is maybe. But they never did. And this is their burden to have done that. It's their burden to prove it. I'd say even if we put the federal court aside, there's nothing happening in New Mexico. We can even focus on a very concrete example. The New Mexico interpleader, Merrill Lynch, everything relating to plaintiffs is gone in 2009. June 2, 2011 is when the New Mexico interpleader is resolved, completed. That's when the court dismisses it. Three weeks later, June 21, Merrill Lynch files in the Middle District of Pennsylvania a joint case management plan, makes no mention. Oh, by the way, we think everything's been resolved in New Mexico. And if they had done that, I would have immediately moved to New Mexico. I would have immediately moved to Pennsylvania. They wait until the 40-day appeal period lapses in New Mexico and then come back around to say everything should have been in New Mexico. In terms of federalism issues, part of what we're missing here is this federal court is supposed to guess at what a New Mexico court would have done had the defendants raised it. That's the essence of acquiescence. They should have told the New Mexico court November 2009. By the way, with the conclusion of the interpleader, compulsory rejoinder, we want a judgment here. I'm confused by something you've said. You've said that what they did in New Mexico was insufficient. They just basically mentioned their opposition when you said they're contemplating this other action. I've suggested to you that would a letter suffice? You're not sure. They've said that procedurally they couldn't have made any other motion other than possibly a motion to stay. They're not quite sure about that. Anything short of that, it would seem that they believe they're procedurally tied. What exactly is it that you believe they could or should have done at an earlier time than they did in the Eastern District? At a minimum in New Mexico, they should have filed very promptly for a summary judgment. Once the pleadings was closed, under their argument, once that answer is filed by my client, done. We have failed to raise a compulsory rejoinder claim. They should have raised it then. They should have raised it. November 2009 is when the New Mexico court says interpleader granted. They should have raised it right at that point. Motion for summary judgment. I want my final judgment to take the Pennsylvania. The question, though, is what should they do in the Eastern District of Pennsylvania? That's what Judge Greenway asked. What do they have to have done? I think they needed to move and either of the courts needed neither. If we're talking about the Eastern District, they should have at least raised it to the court there. I believe they could have filed a motion for a stay or a motion for a lus pendens. If we're talking about abstention, if we're talking about Colorado River, that's a standard for resolving it on the merits. I think what they should have done is told the Eastern District, this is going to be litigated in New Mexico, please stay it, and then plaintiffs would have gone to New Mexico and would have said, what's the scope of the interpleader here? Didn't you know you were at risk proceeding in New Mexico? That's the basis of res judicata. I don't understand this restatement. Unfortunately, I'm on ALI, and I see how these restatements come to pass, and it's not pretty. Res judicata principles, once you start another action, you know that if that first one proceeds to judgment, you're at risk in terms of the claims you could have brought. You're not? It's two responses. First is under Spring City, you're at risk for similar issues. It's not a broad if you have the same parties. It's similar issues. No, it's the same basic facts. It's claims that could have been brought based upon the same facts, and we have the totally factual identity here. But you have an interpleader with no tort claims versus a claim elsewhere that's entirely tort claims in it. Right. Well, I'll just say that rest judicata is not about the same claims. Well, that would be our position. They need to raise it in either one of them of any sort whatsoever. There would have been a ruling from either the district court of some sort. We're abstaining. We're staying. There would have been a ruling from the New Mexico court. Right here, we're having the Third Circuit guess what would have been compulsory joining during New Mexico, having never asked the New Mexico court did they need to join this. That's where they needed to have started. They needed to ask that New Mexico court, I want my judgment. I want my judgment to take to the Eastern District and get out of this. The district court didn't review any of this, really. That's what makes it a little difficult. Do you dispute along those lines? I presume, well, I won't presume. Do you dispute his Colorado River analysis? My problem with it is it's never been raised to the district court. I dispute it in that there was no option for them to raise an objection to it. Could there have been an extension requirement? Yes, there could have been. But I would actually view it as no. These were entirely separate litigations. Spring City has entirely separate litigation off of it. There's not a duty to abstain from hearing completely different claims. So I think if they had presented that to district court, the district court would go, well, that's an interpleader over there, and I've got tort claims over here. They're separate cases. So they'll proceed. So they'll proceed. And, Your Honor, I would answer this as a policy issue. I could have thwarted it if they had raised this earlier. I would never have let New Mexico discontinue, and I would have left the state court in New Mexico just churning endlessly on a file. I can't believe that that's a good policy to leave that open. It's good to resolve cases if the parties are able to resolve it. The rule here would be I need to leave that thing open forever. But when you didn't dismiss it, you were at risk. Well, they never raised this as a risk. That claim was never in there. I'm saying as a matter of law, we all know what res judicata is. Have you got two lawsuits going? You have a risk that that first one comes to judgment, it's going to be held res judicata. If they're the same claims. But the same risk goes to them for acquiescence. You can't just let something go for two years without measuring it. Okay. Thank you very much. The case was well-argued by you, and I think by us, too. Thank you very much. Recess. Thank you.